26CA0117 Peo in Interest of JL 07-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 26CA0117
Douglas County District Court No. 23JV30057
Honorable Ryan J. Stuart, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of Jac.L. and Jax.L., Children,

and Concerning B.B. a/k/a B.L.,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE SCHUTZ
Lipinsky and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 30, 2026

---

Jeffrey A. Garcia, County Attorney, Erinn Walz, Assistant County Attorney, Castle Rock, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, B.B. a/k/a B.L. (mother) appeals the judgment terminating her parent-child legal relationships with Jac.L. and Jax.L. (the children). We affirm.

## I.    Background

¶ 2    In May 2023, the Douglas County Department of Human Services filed a petition in dependency and neglect based on concerns about, among other things, mother's substance use. The juvenile court adjudicated the children dependent or neglected and adopted a treatment plan for mother.

¶ 3    The children resided in several placements during the pendency of this case. Shortly after the case was opened, the court removed the children from the family home. Following two consecutive, brief foster placements, the children were returned home to mother on a trial basis. Ten months later, the Department received a report alleging that mother drove under the influence with the children's half-sibling (who is not involved in this appeal). The court then ordered that the children be placed in foster care. Later, the court ordered an Interstate Compact on Placement of Children (ICPC) home study of the children's maternal grandmother's home in New York. The ICPC home study was

approved, and the court placed the children with maternal grandmother, where they remained for the duration of the case.

¶ 4 After holding a hearing on the Department's termination motion in December 2025, the court terminated mother's parent-child legal relationships with the children.

## II. Less Drastic Alternatives

¶ 5 Mother contends that the juvenile court erred by determining that there was no viable less drastic alternative to termination of her parental rights. She asserts that the children's best interests would have been served through an allocation of parental responsibilities (APR) to maternal grandmother instead. We are not persuaded.

### A. Legal Framework and Standard of Review

¶ 6 A juvenile court may terminate a parent's parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 7     Before terminating parental rights under section

19-3-604(1)(c), the court must also consider and eliminate less

drastic alternatives.  *People in Interest of L.M.*, 2018 COA 57M, ¶ 24.

In considering less drastic alternatives, a court must give primary

consideration to the child's physical, mental, and emotional

conditions and needs.  *People in Interest of Z.M.*, 2020 COA 3M,

¶ 29; *see* § 19-3-604(3).  The court may also consider, among other

things, the parent's fitness, *see L.M.*, ¶ 27, and whether an APR

would adequately meet the child's need for permanence and other

needs, *see People in Interest of T.E.M.*, 124 P.3d 905, 910 (Colo.

App. 2005).

¶ 8     For a less drastic alternative to be viable, it must do more than

adequately meet the child's needs; rather, it must be in the child's

best interests.  *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 27.

¶ 9     "We review a juvenile court's less drastic alternatives findings

for clear error."  *People in Interest of E.W.*, 2022 COA 12, ¶ 34.

Thus, when a court considers less drastic alternatives because it

finds that termination is in the child's best interests, we are bound

to affirm the decision so long as the record supports its findings.[1] *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## B.    Analysis

¶ 10    The juvenile court determined that an APR would not achieve the permanency that the children "deserve[d]" and that there was not a less drastic alternative that would serve their best interests. *See T.E.M.*, 124 P.3d at 910.  In doing so, the court found that mother had not seen the children in months, had not improved her relationship with them, and was unlikely to achieve sobriety in sufficient time to be able to parent them.  *See L.M.*, ¶ 27.  The court also found that the children's needs were being met by maternal grandmother, who wished to adopt them.  *See Z.M.*, ¶ 31 (recognizing that the juvenile court may consider whether the placement favors adoption rather than an APR).

---

[1] In *People in Interest of H.L.B.*, 2025 COA 86, *cert. granted*, 25SC721, 2026 WL 353234 (Colo. Feb. 2, 2026), Judge Welling filed a special concurrence suggesting that the supreme court may wish to consider whether it is more appropriate to review a trial court's factual findings regarding a less drastic alternative for clear error, but review the court's ultimate conclusion of whether a less drastic alternative is in the children's best interest under the abuse of discretion standard.  *See id.* at ¶ 40 (Welling, J., specially concurring).

¶ 11    The record supports the court's findings and shows that maintaining sobriety was a longstanding struggle for mother. Mother's drug and alcohol use was an issue in a prior dependency and neglect case. The caseworker testified that mother had not demonstrated sobriety during this case. She explained her concern that mother was using substances based on mother's behavior throughout the case and various reports that the caseworker had received.

¶ 12    The record also shows that mother did not have contact with the children for extended periods during the pendency of the case.[2] One of those stretches spanned over two months and directly preceded the termination hearing. Mother did not consistently or timely attend her therapeutic family time and sometimes returned

---

[2] The caseworker testified that there were periods during the case in which she was unable to reach mother or the children's father, J.L. (father). With respect to father, the caseworker described, more precisely, that he communicated only "[v]ery sporadic[ally]" with the Department and "never engaged" in rehabilitative services during the case, outside of therapeutic family time. Domestic violence on father's part was one of the reasons the Department opened the case, and father never completed a domestic violence offender evaluation or treatment. The juvenile court also terminated father's parent-child legal relationships with the children. Father does not appeal that ruling.

to her car during sessions. The family time supervisor testified that supervision remained at this level because, (1) "on the whole," mother did not mitigate the Department's various concerns about her visits; and (2) the children remained stressed about her attendance and behavior. The caseworker, who was qualified as an expert in child protection casework, opined that mother had not complied with the treatment plan requirement that she maintain a positive bond with the children through consistent family time.

¶ 13 In addition, the caseworker opined that the children needed permanency because (1) the "ups and downs" of the case had been detrimental to them; and (2) they worried about mother when she was nonresponsive, which impacted their behavior and "the way that they emotionally adjust to things." As noted, the children moved between numerous placements during the two and a half years the case was open. Maternal grandmother testified that she wished to adopt the children because they deserved a stable, nonviolent, safe, and loving home that provided them structure. According to the caseworker, maternal grandmother was meeting the children's needs and providing them with structure and routine.

¶ 14    Nonetheless, mother maintains that the court erred by terminating her parental rights because (1) an APR would have allowed the children to maintain their "bonded" relationship with her; and (2) maternal grandmother was willing to allow contact if mother was sober. To that end, mother points to evidence that may have conceivably supported a different result, such as testimony that the children were excited to see her during visits. But mother does not challenge the court's well-supported factual findings, including that her relationship with the children had not improved and that she had not seen them in months. Instead, she effectively asks that we reweigh the evidence and find in her favor. However, we cannot reweigh the evidence, nor do we substitute our judgment for that of the juvenile court. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29; *cf. In re Marriage of Kann*, 2017 COA 94, ¶ 36 ("[O]ur supreme court has . . . expressed unbridled confidence in trial courts to weigh conflicting evidence.") And the court specifically found that an APR would not provide the children with adequate permanence.

¶ 15    The record amply supports the court's determination that no less drastic alternative was in the children's best interests, given

their needs, "the circumstances, [and] the posture of this case."
*See Z.M.*, ¶ 29 (in considering less drastic alternatives, a juvenile court must give primary consideration to the child's needs); *see also L.M.*, ¶ 27 (a less drastic alternatives determination will be influenced by a parent's fitness to care for their child). Because the court's less drastic alternatives and related best interests findings are amply supported by the record, we perceive no error in its decision to terminate mother's parental rights.[3] *See B.H.*, ¶ 80; *E.W.*, ¶ 34.

### III.   Disposition

¶ 16    The judgment is affirmed.

JUDGE LIPINSKY and JUDGE YUN concur.

---

[3] We reach this same conclusion under either the clear error or abuse of discretion standard of review. *See H.L.B.*, ¶ 40 (Welling, J., specially concurring).